BRAY and another, Appellants, vs. PARCHER, Respondent.

*May 5 — June 3, 1891.*

*Statute of frauds: Oral promise to answer for debt of another: Personal promise of receiver: Consideration.*

Mortgagees of property belonging to an insolvent corporation released their lien and allowed the receiver of the corporation to sell the property and use the proceeds in the course of his business as receiver, upon the faith of his promise, both as receiver and in his individual capacity, to pay them at a future time the value of the property thus sold. Personally the receiver derived no benefit from such release of the lien. *Held*, that his personal promise, being one to answer for the debt of another and not being in writing, was void under sec. 2307, R. S.

APPEAL from the Circuit Court for *Brown* County. In 1884, and previous thereto, the Lincoln Lumber Company was a corporation operating a saw-mill and dealing in logs and lumber at Merrill, in this state. The company became insolvent, and an action was brought in the circuit court to close its affairs. In April, 1884, *Robert E. Parcher*, the defendant, was appointed by the court receiver of the company. He duly qualified and entered upon his duties as such, and took possession of the property and assets of the company.

At the time of these transactions the company was largely indebted to *Bray* and *Choate*, the plaintiffs, who

held as security for such indebtedness a lien· upon over
900,000 feet of logs, and. a bill of sale of a large quantity
of lumber and shingles piled in the yard of the company
and marked with plaintiffs' names. The receiver had but
a small amount of available assets of the insolvent com-
pany in his hands. The saw-mill was out of repair, and
more money was required to put it in running order than
he could realize out of such assets. He believed that if the
mill could be repaired, so that it could be operated to saw
the logs (including those upon which plaintiffs had such
lien) already provided to be sawed there, it would be for
the best interests of the company and its creditors. So
about May 1, 1884, he applied to the plaintiffs for leave to
sell a portion of the lumber and shingles included in their
bill of sale or chattel mortgage, and to use the proceeds
thereof in the course of his business as receiver. The plaint-
iffs granted such leave on condition that the receiver pay
them the value of the lumber and shingles thus sold by him
before the following winter. The plaintiffs allege that the
defendant also personally agreed to pay therefor at that
time. The defendant denies the alleged personal promise,
but there seems to be some testimony tending to show that
he made it as collateral to his undertaking as receiver. If
made, however, it was merely a verbal promise.

Pursuant to the above arrangement, defendant sold a large
amount of the lumber and shingles in question during the
spring and summer of 1884, and used all the proceeds
thereof in the business of his receivership, chiefly perhaps
in repairing the saw-mill. The cost of such repairs largely
exceeded the estimate thereof, and lumber depreciated in
value. The result was that before the following winter the
proceeds of such sales and all the available assets of the
company were exhausted, and plaintiffs have been paid
nothing on account of such sales. The plaintiffs foreclosed
their liens on the property covered thereby, not thus sold

by the receiver, and applied the proceeds of the sale thereof on their demand against the lumber company, leaving an unpaid balance due them from the company exceeding the value of such lumber and shingles thus, released from their lien and sold by the receiver. They thereupon, after due demand, brought this action against the defendant personally to recover such value.

The foregoing facts appear by the pleadings and the testimony given on the trial. The circuit court held that the personal collateral promise of the defendant to pay for the lumber and shingles in question was an undertaking to answer for the debt of another, and that the same is void under the statute of frauds because not in writing, and nonsuited the plaintiffs. Judgment for the defendant was entered accordingly, from which the plaintiffs appeal.

For the appellants there was a brief by *Weisbrod, Thompson & Harshaw*, and oral argument by *A. E. Thompson*. They cited Read, Stat. of Frauds, sec. 39; *Robinson v. Gilman*, 43 N. H. 485, 492; *Mercein v. Mack*, 10 Wend. 463; *Dyer v. Gibson*, 16 Wis. 560; *Castling v. Aubert*, 2 East, 325; *Williams v. Leper*, 3 Burr. 1886; *Edwards v. Kelley*, 6 Maule & S. 208; *Clapp v. Webb*, 52 Wis. 638; *Young v. French*, 35 id. 111; *Weisel v. Spence*, 59 id. 301; De Colyar, Guar. (Am. ed. 1875), 152; *Emerson v. Slater*, 22 How. 28; *Furbish v. Goodnow*, 98 Mass. 296; *Booth v. Eighmie*, 60 N. Y. 238.

For the respondent there was a brief by *Bardeen, Mylrea & Marchetii*, attorneys, and *Silverthorn, Hurley, Ryan & Jones*, of counsel, and the cause was argued orally by *C. V. Bardeen*.

LYON, J. The only interest plaintiffs had in the lumber and shingles in question they acquired by their bill of sale thereof, which was given as security for the indebtedness of the Lincoln Lumber Company to them. They were,

therefore, mortgagees of the property. All the remaining interest therein was in the receiver of the company, which interest he might lawfully dispose of. Hence the leave given by plaintiffs to the receiver to sell the property and use the proceeds in the business of the receivership was not a sale of the property, but only a release of their lien thereon. Its effect was to enable the receiver to dispose of the property absolutely, whereas, but for such release, he could only have disposed of it subject to plaintiffs' lien thereon.

It is very clear to our minds that defendant applied to plaintiffs for leave to sell the mortgaged property and use the proceeds in the course of his business as receiver, and promised to pay therefor at a future time, not in his personal capacity, but as receiver duly appointed by the court to settle and close the business of the insolvent company; and that the plaintiffs released their lien thereon to the receiver for the benefit of the company and its creditors, and in the first instance accepted the promise of the receiver to pay for the lumber in his official capacity. Such is the plain, unmistakable purport of the transactions between them. Thus far the plaintiffs, and the defendant as receiver only, were the contracting parties.

We assume, however, that the defendant, in his individual capacity, also verbally promised to pay plaintiffs for the lumber and shingles in question at the time above indicated, and that on the faith of such personal promise, and in consideration thereof, plaintiffs released their lien thereon to him as receiver. None of the transactions above mentioned reduced or in any manner affected the demand of plaintiffs against the Lincoln Lumber Company. That remained a valid, subsisting indebtedness against the company. The undertaking of defendant as receiver was to pay that debt to the extent of the value of the property in question thus sold by him. The personal undertaking of defendant was

collateral thereto, and was, subtantially, that if as receiver he failed to make such payment, he should be personally liable therefor. Under all the authorities, this is an undertaking to answer for the debt of another. This raises the question whether there is any fact or circumstance in the case which takes this collateral verbal promise out of the operation of the statute of frauds.

It has been held by this court many times that such a verbal promise is void by the statute of frauds (R. S. sec. 2307) unless it was made upon some new consideration of benefit accruing or moving directly to the promisor. If made upon such consideration, it is not within the statute. The cases which so hold are cited in *Hoile v. Bailey*, 58 Wis. 434, and *Weisel v. Spence*, 59 Wis. 301. The subject is so fully considered in those two and the other cases there cited, and the rule is so firmly established, that further discussion of the subject here is not required. Was there any consideration accruing or moving to the defendant for his personal agreement above mentioned? Defendant was not a creditor of the lumber company. It had none of his property when it failed. Theretofore he had no dealing whatever with it. It does not appear that his compensation as receiver was in any manner affected by the release of plaintiffs' lien on the property. When he surrendered his trust and was discharged therefrom the court allowed him a gross sum for his services as receiver, but there is no suggestion in the testimony that such allowance was increased because of the release of such lien. In brief, there is no testimony in the case showing, or tending to show, that the defendant personally received anything or derived any benefit whatever from the release by plaintiffs of their lien on the property in question. The release was to the receiver, and the whole consideration therefor accrued to the benefit of the insolvent company and its creditors, who are represented by the receiver, and not to the defendant individually.

Some confusion has crept into the argument of the learned counsel for plaintiffs, growing out of the fact that the receiver and the alleged personal promisor are one and the same person. The case is the same as it would have been had some person other than the defendant been the receiver to whom plaintiffs released their lien on the property, and had the defendant, in consideration of such release and that alone, also agreed verbally that he would make such payment if the receiver did not. In such case it cannot be doubted that the verbal agreement of defendant would be void under the statute, he receiving no consideration for such promise. While in form he would have been surety for the default of the receiver, in substance he would have been surety for a portion of the debt of the lumber company to plaintiffs. Such, in principle, is the present case. It must be held, therefore, that for the reasons stated the agreement sued upon in this action is void, and hence that the nonsuit was properly ordered.

*By the Court.*— The judgment of the circuit court is affirmed.